[Civ. No. 11038. Fourth Dist., Div. One. Sept. 28, 1971.]

COUNTY OF SAN DIEGO, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
DONALD DWAIN DODD et al., Real Parties in Interest.

## COUNSEL

Robert G. Berrey, County Counsel, and Anthony Albers, Deputy County Counsel, for Petitioner.

No appearance for Respondent.

Thompson, Bunker & Sullivan and James E. Bunker for Real Parties in Interest.

## OPINION

**WHELAN, Acting P. J.**—San Diego County, through its Department of Public Welfare (Department), has petitioned this court to issue an appropriate writ holding the Superior Court of San Diego County to be without jurisdiction to proceed with petitions for the adoption of two minors now pending in respondent court.

The minors are Ki Ann Carprise Boyd and Genova Ray Chaloux, respectively born November 2, 1966 and September 8, 1966; respectively de-

clared dependent children of respondent court on November 15, 1967, and July 3, 1968; respectively placed in the same foster home on or about November 29, 1967 and October 25, 1968. Each child has been declared free from the custody and control of her parents under circumstances hereafter stated. The orders were made respectively on January 12, 1971, and December 28, 1970.

The petitions for adoption were filed by Donald Dwain Dodd and June Earline Nuss Dodd, who are the foster parents with whom the children were placed by the court.

No licensed adoption agency has placed either of said children for adoption with the Dodds. Department is a licensed adoption agency and contends both children have been referred to it for adoptive placement.

Since 1970, Civil Code section 224n provides in part: "No petition may be filed to adopt a child relinquished to a licensed adoption agency *or a child declared free from the custody and control of either or both of his parents and referred to a licensed adoption agency for adoptive placement,* except by the prospective adoptive parents with whom the child has been placed for adoption by the adoption agency." [Italics added.]

The claim the children had been referred to Department for adoptive placement came about thus:

The petitions to have the children declared free from custody and control were filed on June 4, 1970, and June 29, 1970, respectively, by the chief probation officer of the court, who in each petition also requested that Homer E. Detrich in his capacity as Director of the Department of Public Welfare be appointed guardian pursuant to Civil Code section 239.

Civil Code section 239, adopted in 1967, provides: "If the court by order or judgment declares a minor person free from the custody and control of both parents under the provisions of this chapter, the court shall at the same time appoint a guardian of such minor person."

In each instance the order declaring the child free from custody and control appointed Homer E. Detrich, Director of the San Diego County Department of Public Welfare, guardian pursuant to Civil Code section 239; and stated that upon the filing of a certified copy of a decree of adoption the need for a guardian would terminate and the guardian should be discharged.

■ We are presented with the narrow question whether either of the children has been referred to a licensed adoption agency for adoptive placement within the meaning of Civil Code section 224n. If they have been, the court would be without jurisdiction to entertain the pending petitions for

adoption, since admittedly neither child has been placed in the home of the Dodds for adoption by Department.[1]

It is not contended section 224n has a meaning other than that the superior court is the entity that refers a child for adoptive placement.

The guardian of a minor is not given the right to place a child for adoption.

The appointment of a guardian under Civil Code section 239 is not *per se* a referral for adoptive placement under Civil Code section 224n. We do not see that without more it becomes so because the guardian is also an employee or official of a licensed adoption agency.

Nothing in the files of either proceeding to free from custody and control, which we have had brought before us, speaks of a referral for adoptive placement under section 224n.

At the time of oral argument, counsel for County stated it had not been explained to the trial judge in the proceedings to free from custody and control that Department took the position that in appointing its director as guardian under Civil Code section 239 the court was referring the children to Department for adoptive placement under section 224n.

In support of the petitions to have the minor children declared free from custody and control, the Probation Department filed reports,[2] which in the case of Ki Ann stated: "It is felt that it is unfair to Ki-Ann to be a dependent child of the Juvenile Court when there is a permanent home available for her. Mr. and Mrs. Dodd, who have provided for Ki-Ann since the age of one, are willing and sincerely interested in adopting Ki-Ann. They will be able to provide her with a permanent home and be loving and responsible parents."

In the case of Genova, the report stated: "Genova has also been found a suitable candidate for adoption. Her foster parents wish to adopt Genova and can provide her with an excellent home. Genova has received excellent care from her foster parents. She has developed into a happy, active child. . . .

---

[1] See *Adoption of Runyon*, 268 Cal.App.2d 918 [74 Cal.Rptr. 514], where a child had been relinquished for adoption to a licensed adoption agency. The court held adoption proceedings could be entertained only on behalf of persons with whom the agency had placed the children for purposes of adoption.

[2] Civil Code section 233 provides, and since 1961 has provided, in part: "The juvenile probation officer shall render to the court a written report of his investigation with a recommendation to the court of the proper disposition to be made in the action in the best interests of said minor person. The court shall receive such report in evidence and shall read and consider the contents thereof in rendering its judgment."

". . . . . . . . . . . . . . . .

". . . Genova's foster parents are very much interested in adopting this child and can provide her with a loving home."

During the hearing in the matter of Ki Ann, the following colloquy took place: "THE COURT: She is not adopting the child, is she?

"MR. HARMON: I believe that is the plan, that once freed, the foster mother may adopt her, or this is a possibility.

"THE COURT: What's your policy on that about advising the foster mother?

"PROBATION OFFICER: She will make plans to make application of Department of Welfare Adoptions to adopt the child."

The following is alleged in the opposition of the Dodds to the petition for a writ of prohibition or mandate and has not been traversed: "JAMES E. BUNKER, Attorney at Law, was appointed by the Court to represent the natural father, DAVID BRUCE CHALOUX, at the freedom from custody and control hearing. Said father is a wounded veteran from the Vietnam war and does not live in San Diego County. When said natural father was advised by JAMES E. BUNKER that said minor child had been in the present foster home for two and one-half years and that the Probation Department was recommending the foster parents to adopt said minor child, the father reached the decision to allow the foster parents to adopt said child and not contest the freedom from custody and control action."

The petitions to free from custody and control were filed by the chief probation officer of County, a person subject to the authority of the superior court.

We have considered whether Civil Code section 232.9, which was in force when each of the orders was made, authorizes or compels a different result.

In 1970, section 232.9 was added to the Civil Code. It provides in part: "The State Department of Social Welfare, a county welfare department, a county adoption department, or a county probation department which is planning adoptive placement of a child with a licensed adoption agency, or the State Department of Social Welfare acting as an adoption agency in counties which are not served by a county adoption agency, may initiate an action under Section 232 to declare a child free from the custody and con-

trol of his parents. The fact that a child is in a foster home licensed under subdivision (a) of Section 16000 of the Welfare and Institutions Code shall not prevent the institution of such an action by any such agency or by a licensed adoption agency pursuant to Section 232."

There is a body of opinion in social welfare and sociological, and perhaps in judicial and legislative, circles favoring the separation of the whole machinery of child adoptions from the judicial function and placing it in the hands of administrative agencies.

If Civil Code section 232.9 was intended to empower the Probation Department to refer a child for adoptive placement to a licensed adoption agency under section 224n, it should have said so in clear, unequivocal and nonobscurantist language.

The petitions to declare free of parental custody which are before us were not, so far as appears from their wording, designed within the framework of such a theory. They do not so much as mention adoptive placement, plans therefor, or a licensed adoption agency.

It would be possible to imagine some ulterior design on the part of Department if it had been responsible for having the probation officer file the petitions, since Department itself had the authority to do so.

Civil Code section 232 contains these provisions, among others, which antedated the proceedings to declare free from custody and control: "The fact that a child is in a foster care home, licensed under subdivision (a) of Section 16000 of the Welfare and Institutions Code, shall not prevent a licensed adoption agency which is planning adoption placement for the child, from instituting, under this subdivision, an action to declare such child free from the custody and control of his parents.

". . . . . . . . . . . . . . . . . . .

"A licensed adoption agency may institute under this section, an action to declare a child, as described in this section, free from the custody and control of his parents."

We must not place upon all of this an interpretation of devious conduct upon the part of either the probation officer or Department. Although the director of Department may hold the good faith belief that the children were referred to Department for adoptive placement, the probation officer and each of the two trial judges seem to have had the belief that by freeing the

children from custody and control the court would make the children available for adoption by the Dodds.

The petition for writ of prohibition and mandate is denied.

Ault, J., and Coughlin, J,* concurred.