[No. B095575. Second Dist., Div. Two. Feb. 21, 1996.]

JANET O. et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
COUNTY OF LOS ANGELES, Real Party in Interest.

**COUNSEL**

Mary L. Baca and Kathy Klein for Petitioners.

No appearance for Respondent.

De Witt W. Clinton, County Counsel, and Frederick R. Bennett, Assistant County Counsel, for Real Party in Interest.

**OPINION**

**FUKUTO, Acting P. J.**—Janet O. and Alfonso M., Sr., have petitioned this court for an extraordinary writ of mandate directing the superior court to set aside its order of July 6, 1995, relieving counsel for petitioners.

We are asked to decide whether Welfare and Institutions Code section 317,[1] which permits the appointment of counsel for indigent parents in dependency cases, authorizes the court to relieve counsel upon being presented with evidence indicating that the parents have lost interest in the proceedings and no longer desire counsel. We conclude that counsel may be relieved, but only upon proper notice to their clients.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 19, 1989, Vincent M. (age four years), Isidro M. (age three years), and Valerie M. (age three days) were declared dependents of the court pursuant to section 300. The mother of all three minors is petitioner Janet O. The father of Valerie is alleged to be petitioner Alfonso M.[2] Both petitioners appeared for the detention hearing. The court appointed Mary L. Baca to represent the mother, and Kathy Klein to represent the father.

On August 16, 1989, the petition was sustained as to all three minors. Valerie was placed with petitioner Alfonso M., and the other two minors were placed with grandparents. On December 19, 1990, jurisdiction as to Valerie's siblings was terminated, and the case closed as to them.

On May 15, 1990, a subsequent petition was filed, and Valerie was detained in the home of her paternal aunt under the supervision of the department of children and family services (DCFS). On May 30, 1991, a new petition was filed concerning a fourth child, Alfonso M., Jr., born May 12, 1991. On July 25, 1991, both petitions were sustained. Alfonso was placed with a maternal aunt and uncle.

On January 22, 1993, the DCFS social worker assigned to the case prepared a report which indicated that neither the mother nor the father had visited Valerie or Alfonso since the prior court date of January 24, 1992.

On December 8, 1993, parental rights were terminated as to Valerie. On December 7, 1994, jurisdiction was terminated over Valerie upon the court being informed that a final decree of adoption had been entered.

In a report prepared for the December 7, 1994, hearing, the DCFS social worker reported that Alfonso's mother had not seen him since he was three weeks old, and that his father had not seen Alfonso since he was three months of age.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] The whereabouts of Vincent and Isidro's father was unknown.

On January 4, 1995, guardians were appointed for Alfonso. Real party contends, and petitioners do not deny, that although the court could have terminated jurisdiction as to Alfonso on that date, it retained jurisdiction at the request of his guardians so that Alfonso could continue to receive county financial assistance.

On July 6, 1995, the court ordered Klein and Baca "relieved for cause pursuant to [section] 317." Shortly thereafter, Klein and Baca moved to set aside the order and for reappointment. Relying primarily on *In re Tanya H.* (1993) 17 Cal.App.4th 825 [21 Cal.Rptr.2d 503] (*Tanya H.*), they claimed that once counsel was appointed pursuant to section 317, counsel could not be relieved except for "cause" as set forth in subdivision (d) of the statute.

The court took the position that "good cause" existed because it is "impossible" for an attorney to represent his or her client if the attorney has no contact with the client.

Klein and Baca conceded their clients had not been present in court for some time, and admitted that they had had no contact with their clients for at least a year, and perhaps longer. Klein argued, however, that this did not mean that counsel was no longer necessary. She pointed out that Alfonso had been placed with relatives. She claimed that, "[i]f my client felt that there was anything that he needed to talk to me about, I'm sure that he would have contacted me. [¶] I'm sure he's in agreement with what I've advised him, and he continues to be content with the fact that I'm representing his interests in court, and that's why he's not attending court."

In denying the motion for reappointment, the court noted, "[t]he safeguard to these parents is that should they, in fact, ever contact their attorneys and ask about the case or ask for the court to do something, all these attorneys have to do is say, contact the court. Contact the social worker, and the court will review your request, as [the court is] required to do by law." Klein and Baca filed this petition on behalf of their clients.

## II. DISCUSSION

### A. *Contentions*

Petitioners contend that once counsel has been appointed pursuant to section 317, counsel can only be relieved in the case of substitution or "for cause" as set forth in subdivision (d). Alternatively, petitioners contend that "[a]n attorney cannot be relieved sua sponte without notice and warning of consequences by the court to the affected parties."

## B.  *Section 317*

Section 317 provides as follows:

"(a) When it appears to the court that a parent or guardian of the minor desires counsel but is presently financially unable to afford and cannot for that reason employ counsel, the court may appoint counsel as provided in this section.

"(b) When it appears to the court that a parent or guardian of the minor is presently financially unable to afford and cannot for that reason employ counsel, and the minor has been placed in out-of-home care, or the petitioning agency is recommending that the minor be placed in out-of-home care, the court shall appoint counsel, unless the court finds that the parent or guardian has made a knowing and intelligent waiver of counsel as provided in this section.

". . . . . . . . . . . . . . . . . . . . . . . . . .

"(d) The counsel appointed by the court shall represent the parent, guardian, or minor at the detention hearing and at all subsequent proceedings before the juvenile court. Counsel shall continue to represent the parent or minor unless relieved by the court upon the substitution of other counsel or for cause. The representation shall include representing the parent or the minor in termination proceedings and in those proceedings relating to the institution or setting aside of a legal guardianship."

## C.  *Statutory Intent*

Our first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. "In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. . . . The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.]" (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) In sum, rules of statutory construction require courts to construe a statute to promote its purpose, render it reasonable, and avoid absurd consequences. (*Landrum* v. *Superior Court* (1981) 30 Cal.3d 1, 9 [177 Cal.Rptr. 325, 634 P.2d 352].)

Petitioners first appeared in this action on June 19, 1989, as a result of a petition filed by DCFS recommending out-of-home care of the minors. The court was, therefore, required to appoint counsel pursuant to section 317, subdivisions (a) and (b), which, when read together, provide that if a parent is unable to afford counsel and "desires" to be represented, the court "shall" appoint counsel. In the event a parent advises that he or she does not desire representation, the court must obtain a knowing and intelligent waiver.

■ Petitioners, relying on the following language from section 317, subdivision (d), "Counsel shall continue to represent the parent . . . unless relieved by the court upon the substitution of other counsel or for cause," claim that once a juvenile court appoints counsel, it is not permitted to revisit the issue of whether a parent continues to "desire" representation.

Highlighting the word "shall," petitioners interpret the mandate of section 317, subdivision (d) as unequivocal; once a parent has expressed a desire for counsel, and an attorney has been appointed to represent his or her interests, representation must continue unless there is a substitution or there is cause. Petitioners' reading of section 317 is, in our estimate, flawed. They ignore additional language in section 317, subdivision (a) which provides that a parent must "desire" representation before it will be provided. To construe the section's language as prohibiting the court from relieving counsel where, as here, the evidence indicates the parents no longer desire representation, would scuttle the purpose of the statute which is to provide counsel only to those parents who desire representation and are financially unable to afford counsel. Contrary to petitioners' assertion, *Tanya H.* does not provide otherwise.

D. *Tanya H.*

In *Tanya H.* the juvenile court reviewed a permanent plan submitted by DCFS pursuant to section 366.25, subdivision (a), accepted the recommendations set forth therein, and ordered that the subject minors remain with their grandmother in long-term foster care. (*Tanya H., supra*, 17 Cal.App.4th at p. 828.) Over the father's objection, the juvenile court then relieved his attorney pursuant to a written policy memorandum issued over the signature of the supervising judge of the dependency court. (*Id.* at pp. 828-829.) The father appealed.

Pursuant to the memorandum, the juvenile court was required, following the first review of a permanent plan, to relieve attorneys appointed to represent indigent parents " 'unless good cause to the contrary is individually shown by any attorney seeking to remain appointed on the case.' " (*Tanya H., supra*, 17 Cal.App.4th at p. 830.)

The *Tanya H.* court held that the policy memorandum[3] was inconsistent with section 317, subdivision (d). In so holding, the court stated, "Section 317, subdivision (d), provides for continuing representation by the appointed attorney at all postappointment proceedings 'unless relieved by the court upon the substitution of other counsel or for cause.' The policy memorandum provides, inconsistently, for continuing representation only through the first permanency plan review hearing, without regard to cause and without substitution of a new attorney. There is no requirement in the statute that a parent establish, by a preponderance of the evidence or otherwise, a continuing need for counsel. The right is unqualified." (*Tanya H., supra*, 17 Cal.App.4th at pp. 831-832, fn. omitted.)

*Tanya H.* must be confined to its facts. There, it was apparent that the father—who was present at the review hearing and appealed the decision relieving his counsel—maintained an interest in the dependency proceedings. Under those circumstances, the court properly held that he had no obligation to demonstrate a continuing "need" for counsel. The need for counsel in the case of an interested, concerned parent is presumed.

Here, however, the evidence strongly suggests that petitioners have lost all interest in not only the dependency proceedings, but in their children as well. Under these circumstances, the juvenile court not only is permitted to, but should, revisit the issue of whether a parent continues to desire representation.

E.  *"For Cause"*

According to the *Tanya H.* court, the phrase, " 'for cause' must include some good reason personal to the individual sought to be removed [citation], one which affects or concerns the ability or fitness of the appointee to perform the duty imposed upon him [citations] or relates to and affects the administration of the office [citation]. Stated otherwise, 'for cause' means inefficiency, incompetency or other kindred disqualifications. [Citations.]" (*Tanya H., supra*, 17 Cal.App.4th at p. 831, fn. 5.)

■  Here, the petitioners have not been in contact with their attorneys for over a year, have failed to keep the court advised of their current address in

---

[3]Klein and Baca contend that the juvenile court has "now adopted an unwritten policy to achieve the same result in this and many other cases." Although the juvenile court may have relieved counsel in other cases with facts similar to this one, Klein and Baca have failed to present convincing evidence of the adoption of an "unwritten policy" by the juvenile court to circumvent the *Tanya H.* decision.

violation of section 316.1, subdivision (a),[4] and have not attended a court hearing for over three years.[5] Given this conduct on the part of their clients, we are of the opinion that Baca and Klein are at this time unable to perform the duties imposed upon them. This is so because they cannot possibly know what course of action their clients expect them to pursue. Under these circumstances, a juvenile court should be permitted to conclude that petitioners no longer desire representation, and may, pursuant to section 317, find that good cause exists to relieve counsel.

F. *Notice*

Klein and Baca speculate that petitioners have not kept in touch with them because petitioners are "content" with the way in which their interests have been represented. Klein and Baca argue, "[b]y virtue of having represented petitioners for many years, counsel have spent much time with them in many court appearances, mediations, and contested hearings. It is entirely probable that counsel can determine the client's desire regarding these issues, and can act accordingly by making motions, arguments, examining witnesses, etc."

In our opinion, petitioners' unexplained and unexcused failure to appear for over three years, and their failure to keep in touch with either the social worker assigned to the case or their attorneys belie their supposed desire to preserve parental rights, and belie their attorneys' claim that they continue to desire representation. We recognize, however, that parents have a "vital interest in preventing erroneous termination" of their relationship with their children (*Santosky* v. *Kramer* (1982) 455 U.S. 745, 760 [71 L.Ed.2d 599, 611, 102 S.Ct. 1388]), and that to protect that interest, few safeguards are as important as the assistance of counsel. (*In re Bryce C.* (1995) 12 Cal.4th 226, 250 [48 Cal.Rptr.2d 120, 906 P.2d 1275].) ■ Therefore, we conclude that before counsel may be relieved pursuant to section 317, the court should conduct a hearing with notice to the concerned parent(s). (See *Tanya H.*, *supra*, 17 Cal.App.4th at p. 832.) The notice would be sufficient if mailed by first class mail addressed to the parent's last designated mailing address no earlier than 30 days nor later than 15 days preceding the date of the

[4]Section 316.1, subdivision (a), provides: "Upon his or her appearance before the court, each parent or guardian shall designate for the court his or her permanent mailing address. The court shall advise each parent or guardian that the designated mailing address will be used by the court and the social services agency for notice purposes unless and until the parent or guardian notifies the court or the social services agency of a new mailing address in writing."

[5]A review of the juvenile court file indicates the father last appeared on September 30, 1991, and the mother on July 25, 1991.

hearing.[6] The notice should contain a statement regarding the nature of the hearing to be held, i.e., that the court is contemplating relieving counsel.

### III.   Disposition

The petition for writ of mandate is granted. The matter is remanded to the juvenile court with directions to set aside its order of July 6, 1995, and to, thereafter, set for hearing the issue of whether Klein and Baca should be relieved as counsel for petitioners. The temporary stay issued January 2, 1996, is vacated.

Nott, J., and Zebrowski, J., concurred.

Petitioners' application for review by the Supreme Court was denied June 12, 1996.

---

[6]Of course, service of a copy of the notice personally or by certified mail return receipt requested, or any other form of actual notice, would also satisfy the notice requirement.